**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| MOTO MAXX AUTO SERVICE & PERFORMANCE, LLC, | |
| Plaintiff, | CIVIL ACTION FILE |
| v. | NO. 1:26-mi-99999 |
| NEUMO GROUP, LLC d/b/a NEUMO; QUICK PASS EMISSIONS, INC., | |
| Defendants. | |

## PLAINTIFF'S COMPLAINT FOR DAMAGES AND OTHER RELIEF

COMES NOW, Moto Maxx Auto Service & Performance, LLC, by and through its undersigned counsel, and hereby files this its Complaint for Damages and other Relief against the above-named Defendants, and respectfully shows this Honorable Court as follows:

## NATURE OF THE ACTION

1.

This is a civil antitrust action arising under the Sherman Antitrust Act, 15 U.S.C. §§ 1–2, the Clayton Antitrust Act, 15 U.S.C. §§ 14, 15, and 26.

- 1 -

2.

Upon information and belief, Defendant Neumo Group, LLC d/b/a Neumo ("Neumo") is the sole manufacturer and supplier of Georgia MV Express Tag Kiosks ("Kiosk" or "Kiosks") within Rockdale County, Georgia, along with several other counties. Kiosks are a resource that is essential to competition in the automotive emissions testing industry within the relevant geographic market. Because Neumo deliberately and without legitimate business justification refused to supply a Kiosk to Plaintiff while simultaneously supplying, on favorable terms, Plaintiff's direct competitors, Neumo engaged in an anticompetitive scheme through exclusive dealing arrangements that has foreclosed the relevant market to Plaintiff and other non-favored companies. As a direct and proximate result thereof, Plaintiff has suffered and continues to suffer substantial injury to its business.

## PARTIES

3.

Plaintiff Moto Maxx Auto Service & Performance, LLC is a domestic limited liability company organized under the laws of the State of Georgia, with its principal place of business located in Georgia. All of Plaintiff's members are residents of the State of Georgia. Plaintiff is licensed to do business in Rockdale County, Georgia, which is located within the Northern District of Georgia.

4.

Defendant Neumo is a foreign limited liability company organized under the laws of the State of Delaware, with its principal place of business located in Virgina. Upon information and belief, Defendant Neumo is domiciled in Virigina for jurisdictional purposes. Defendant is registered to and does do business within the Northern District of Georgia and throughout the relevant market. Defendant may be served with process through its registered agent, Cogency Global, Inc., which is located at 233 Peachtree Street NE, Suite 2307, Atlanta GA, 30303.

5.

Defendant Quick Pass Emissions, Inc. ("Quick Pass") is a domestic for-profit corporation formed and existing under the laws of the State of Georgia, with its principal place of business located in Georgia. Defendant Quick Pass is domiciled in Georgia for jurisdictional purposes. Defendant Quick Pass may be served with process through its registered agent, Jeremiah Y. Higgins, which is located at 4783 Carlene Way, Lilburn, Georgia 30047.

6.

Defendant Neumo has been properly served with process in connection with this matter.

7.

Defendant Quick Pass has been properly served with process in connection with this matter.

8.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, as this action arises under the federal antitrust laws.

9.

Jurisdiction and Venue are proper as to all Defendants.

## FACTUAL ALLEGATIONS

### I.     **Plaintiff has identified a "Relevant Market".**

10.

The relevant product market is the market for Kiosks used in the automotive emissions testing industry. Kiosks are not reasonably interchangeable with or substitutable by any other product or service for their intended purpose, and there are no economically viable alternatives available to Plaintiff or other competitors in the automotive emissions testing industry.

11.

The relevant geographic market is the State of Georgia, and specifically the counties of Cherokee, Clayton, Cobb, Coweta, DeKalb, Douglas, Fayette, Forsyth, Fulton, Gwinnett, Henry, Paulding and Rockdale, which, upon information and belief, constitute every county in Georgia that requires motorists residing therein to undergo annual emissions testing of their motor vehicles. Defendant Neumo's control over the supply of Kiosk is pervasive throughout this geographic market, and upon information and belief, extends into the markets of eighteen (18) total states, those being: California, Colorado, Florida, Georgia, Hawaii, Illinois, Indiana, Michigan, Minnesota, Nevada, New Mexico, North Carolina, North Dakota, Ohio, Oregon, South Carolina, South Dakota, and West Virginia.

12.

Defendant Neumo entirely controls the supply of Kiosks within the relevant product market and relevant geographic market (together, the "Relevant Market").

## II.    **Defendant Neumo possesses Monopoly Power and has positioned itself in a Dominant Market Position.**

13.

Upon information and belief, no company other than Defendant Neumo has obtained approval has been approved by the Georgia Department of Revenue and/or

the above-referenced counties to provide Kiosks in the State of Georgia. As such, Defendant Neumo's control of the supply of Kiosks within the Relevant Market constitutes monopoly power or, at minimum, substantial market power.

14.

Defendant Neumo acquired and has maintained its dominant position in the Relevant Market by offering programs to local county governments which, if agreed to, allow businesses within those counties to obtain Kiosks. Defendant Neumo decides which such business(es) may obtain Kiosks. Upon information and belief, Defendant Neumo does not publicly disclose a particular set of requirements a business in the Relevant Market must meet to obtain a Kiosk; Defendant Neumo instead decides what business(es) may receive a Kiosk internally.

15.

Because of Defendant Neumo's programs and market dominance, Plaintiff and other competitors in the automotive emissions testing industry have no commercially viable alternative source of Kiosks and are therefore entirely or substantially dependent upon Defendant Neumo for access to a Kiosk and the Relevant Market.

16.

Upon information and belief, the barriers for entry into the Relevant Market

for potential new suppliers of Kiosks are substantial, such that new competitive suppliers cannot realistically emerge in the near term to constrain Defendant Neumo's conduct or compete with Defendant Neumo.

### III.   Defendant Neumo has engaged in an unlawful refusal to deal.

17.

Notwithstanding repeated good-faith requests to purchase or obtain access to a Kiosk from Defendant Neumo, on commercially reasonable and in fact beneficial terms, Defendant Neumo has to-date refused, without legitimate business justification and with anticompetitive intent, to deal with Plaintiff. Nevertheless, Defendant Neumo continues, without justification, to deal with Defendant Quick Pass, a direct competitor of Plaintiff.

18.

Defendant Neumo's refusal to deal with Plaintiff is discriminatory and selective. At all relevant times, Defendant has been supplying a Kiosk to Defendant Quick Pass on terms that Defendant Neumo has denied to Plaintiff, even though Defendant Quick Pass is a direct competitor of Plaintiff in the Relevant Market.

19.

Prior to the conduct alleged hereinabove, Defendant Neumo communicated to

Plaintiff its intention to establish a course of dealing, in which Defendant Neumo would supply Plaintiff with a Kiosk. Defendant Neumo advised Plaintiff that it simply needed to obtain *approval* to place a Kiosk from the Office of the Tax Commissioner of Rockdale County, the county in which Plaintiff is located and does business.

20.

Following the communications referenced in the preceding paragraph, Defendant Neumo advised Plaintiff that in fact, it recommended that the Office of the Tax Commissioner of Rockdale County decline Defendant Neumo's request to place a Kiosk on Plaintiff's property, even though Defendant Neumo had previously communicated to Plaintiff, fraudulently, that it intended to provide Plaintiff a Kiosk.

21.

Defendant Neumo has no legitimate business justification for its discriminatory refusal to deal. Defendant Neumo's course of conduct shows anticompetitive intent. Defendant Neumo's conduct cannot be explained by cost differences, business or creditworthiness concerns, saturation of Kiosk usage, or any other legitimate commercial rationale. Defendant's refusal to deal is explicable only as a deliberate strategy to exclude Plaintiff from the Relevant Market, exercise its monopoly power, and benefit Defendant Quick Pass.

22.

The presence of *each* Kiosk provides a further benefit to the public by allowing greater usage to Georgia Department of Revenue / Georgia Department of Motor Vehicles ("DOR / DMV") services. Defendant Neumo also presumably profits from the placement of additional Kiosks.

23.

Defendant Neumo's refusal to place a Kisok on Plaintiff's property even though doing so would serve as both a financial benefit to Defendant Neumo and a practical benefit to the motoring public is indicative of anticompetitive intent, and of Defendant's usage of its monopoly power / substantial market power to advantage Defendant Quick Pass over Plaintiff.

IV.    **Defendant Neumo has entered into an unjustified and anticompetitive, exclusive dealing arrangement with Defendant Quick Pass.**

24.

In addition to the above, upon information and belief, Defendant Neumo has entered an exclusive dealing contract and/or arrangement with Defendant Quick Pass, termed a "Pilot Program". The Pilot Program, upon information and belief, provides that Defendant Neumo will provide a Kiosk exclusively to Defendant Quick Pass, but not to other similarly-situated competitors in the Relevant Market.

25.

The Pilot Program forecloses competition in the Relevant Market, thereby foreclosing competition within the automotive emissions testing industry. Specifically, the Pilot Program encompasses the entire supply of Kiosks within the Relevant Market, and it produces anticompetitive effects by excluding all business other than Defendant Quick Pass from participating in the Relevant Market, thus preventing them from competing in the automotive emissions testing industry.

26.

The Relevant Market has been foreclosed to Plaintiff and other automotive emission testing businesses because of Defendant's deliberate and anticompetitive scheme. The practical effect of the Pilot Program and Defendant Neumo's refusal to deal with Plaintiff is that Plaintiff is left without access to a resource it needs to properly compete in the automotive emissions testing industry.

**V.** **Defendant Neumo's actions and Defendant Quick Pass's participation harm all competition in the Relevant Market, including Plaintiff.**

27.

Defendant's unlawful conduct has caused and continues to cause substantial harm to competition in the Relevant Market, including: (a) foreclosure of access to the Relevant Market to Plaintiff and other non-favored competitors; (b) maintenance

and entrenchment of Defendant Neumo's monopoly power, and thus, Defendant Quick Pass's competitive advantage created by Defendant Neumo's monopoly power; (c) a significant reduction of output in the automotive emissions testing industry with there being less access to DOR / DMV services; and (d) fewer choices for consumers and downstream market participants, forcing all motors to travel longer and further to obtain DOR / DMV services.

28.

As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered antitrust injury to its business and property, including lost profits, lost customers, lost business opportunities, loss of market share, harm to business reputation, and costs incurred in attempting to obtain a Kiosk from alternative sources, all in amounts to be proven at trial.

## COUNT I – Monopolization by Defendant Neumo

29.

Plaintiff hereby realleges and incorporates by reference Paragraphs 1 – 28 of its Complaint as if fully set forth and restated herein.

30.

The Sherman Antitrust Act, 15 U.S.C. § 2, makes it unlawful for any person

to monopolize, attempt to monopolize, or combine or conspire with any other person or persons to monopolize any part of trade or commerce among the several states.

31.

Here, Defendant Neumo has obtained and continues to maintain monopoly power in the Relevant Market, with the power to control sales and prices and to exclude competition. Defendant Neumo's control of all Kiosks in the State of Georgia is indicative of monopoly power and serves as a significant barrier to entry of the Relevant Market, destroying natural, competitive constraints that might typically affect similar conduct.

32.

Defendant has acquired and maintained its monopoly power through exclusionary and anticompetitive conduct, including: (a) its unjustified and discriminatory refusal to deal with Plaintiff; (b) its exclusive dealing arrangements with its favored competitors, including Defendant Quick Pass; and (c) its deliberate scheme to foreclose Plaintiff from the Relevant Market.

33.

Defendant Neumo's conduct constitutes willful maintenance of monopoly power through exclusionary means rather than through superior product, business acumen, or historical accident, in violation of the Sherman Act.

34.

As a direct and proximate result of Defendant's monopolization, Plaintiff has suffered antitrust injury and is entitled to recover treble damages, plus attorneys' fees and costs. Plaintiff is further entitled to injunctive relief to preclude Defendant Neumo's anticompetitive activities.

## COUNT II – Attempted Monopolization by Defendant Neumo

35.

Plaintiff hereby realleges and incorporates by reference Paragraphs 1 – 34 of its Complaint as if fully set forth and restated herein.

36.

In the alternative, to the extent Defendant Neumo may be found not to possess full monopoly power, Defendant Neumo has engaged in a course of conduct indicating a specific intent to monopolize the Relevant Market, and Defendant Neumo has a dangerous probability of achieving monopoly power therein

37.

Defendant Neumo's activities, including its refusal to deal with Plaintiff and its Pilot Program with Defendant Quick Pass, appear to be aimed at the specific goal of eliminating Plaintiff as a competitive force in the Relevant Market and allowing

Defendant Quick Pass to obtain dominant control of the Relevant Market.

38.

As a direct and proximate result of Defendant's attempted monopolization, Plaintiff has suffered antitrust injury and is entitled to treble damages, injunctive relief, attorneys' fees, and costs.

### COUNT III – Restraint of Trade by Defendant Neumo

39.

Plaintiff hereby realleges and incorporates by reference Paragraphs 1 – 38 of its Complaint as if fully set forth and restated herein.

40.

The Sherman Antitrust Act renders unlawful every contract, combination in the form of trust or otherwise, and/or conspiracy in restraint of trade or commerce.

41.

Defendant Neumo entered into contracts, combinations in the form of trust or otherwise, and/or agreements with Defendant Quick Pass, termed the Pilot Program, which constitute an exclusive dealing arrangement that unreasonably restrains trade in the Relevant Market. The agreement(s) are per se unlawful as group boycotts to the extent they involve concerted refusals to deal with Plaintiff. The agreements

otherwise violate the rule of reason because they substantially foreclose competition in the Relevant Market.

42.

As a direct and proximate result of Defendants' unlawful restraint of trade, Plaintiff has suffered antitrust injury and is entitled to treble damages, injunctive relief, attorneys' fees, and costs pursuant to 15 U.S.C. §§ 15 and 26.

**COUNT IV – Exclusive Dealing by Defendant Quick Pass**

43.

Plaintiff hereby realleges and incorporates by reference Paragraphs 1 – 42 of its Complaint as if fully set forth and restated herein.

44.

The Clayton Antitrust Act precludes any person engaged in commerce from making a contract for sale of goods for use, consumption, or resale on the condition, agreement, or understanding that the purchaser shall not use or deal in the goods of a competitor, where the effect may be to substantially lessen competition or tend to create a monopoly in any line of commerce.

45.

Defendants' exclusive dealing arrangement, termed the Pilot Program,

satisfies all elements of a exclusive dealing arrangement violation: (1) they involve the sale of goods; (2) they contain conditions or understandings that restrict the purchasers' ability to deal with competing suppliers; and (3) their effect is to substantially lessen competition in the Relevant Market and to tend toward the creation of a monopoly therein.

46.

Upon information and belief, Defendant Quick Pass's request for, or agreement to, the Pilot Program presented by Defendant Neumo constitutes an exclusive dealing arrangement that forecloses a substantial share of the Relevant Market, leaving Plaintiff without access to a competitively essential resource and substantially lessening competition in the Relevant Market.

47.

As a direct and proximate result of Defendants' actions, Plaintiff has suffered antitrust injury and is entitled to treble damages, injunctive relief, attorneys' fees, and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays and demands as follows:

(a)     That summons and process be issued, as provided by law, requiring

Defendants to appear and answer Plaintiff's Complaint;

(b)     That service be had upon Defendants;

(c)     That judgment be rendered against Defendants in favor of Plaintiff, in an amount to be determined by a jury;

(d)     For injunctive relief including but not limited to: (i) an order requiring Defendant Neumo to offer Plaintiff access to a Kiosk on terms no less favorable than those offered to Defendant Quick Pass and/or any other competing purchaser in the Relevant Market; (ii) an order prohibiting Defendant Neumo from accepting, entering into, or enforcing exclusive dealing arrangements that foreclose a substantial share of the Relevant Market; and (iii) such other injunctive relief as is necessary to remedy the effects of Defendants' anticompetitive conduct;

(e)     For an award of treble damages, in an amount to be proven at trial, for Plaintiff's actual damages resulting from Defendants' antitrust violations, trebled as provided by law;

(f)     For an award of Plaintiff's reasonable attorneys' fees and costs of suit, as provided by law;

(g)     For pre- and post-judgment interest at the maximum rate permitted by law;

(h)  For a trial by jury on all triable issues;

(i)  For all costs of this action; and

(j)  For such other and further relief as the Court deems just and proper.

Respectfully submitted, this 23rd day of July, 2026.

**STORY LAW, LLC**

/s/ *William R. Story*
William R. Story
Georgia Bar No. 340477
Jackson A. Griner
Georgia Bar No. 495020
will@storylawllc.com
jackson@storylawllc.com

***Counsel for Plaintiffs***

800 Kennesaw Ave NW, Suite 300
Marietta, Georgia 30060
Telephone: (678) 222-2347

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that pursuant to Local Rule 7.1D, that the foregoing Defenses and Answer is double-spaced in 14-point Times New Roman font and complies with Local Rule 5.1.

This 23rd day of July, 2026.

**STORY LAW, LLC**

/s/ *William R. Story*
William R. Story
Georgia Bar No. 340477
Jackson A. Griner
Georgia Bar No. 495020

*Attorneys for Plaintiffs*